# THOMAS E. and LORRAINE L. RAMSEY
*v.*
## DEPARTMENT OF REVENUE

Thomas E. Ramsey, one of the plaintiffs, appeared in persona propria.

Ted E. Barbera, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiffs rendered July 21, 1978.

CARLISLE B. ROBERTS, Judge.

Plaintiffs appealed to this court from the defendant's Order No. I 77-57, dated January 23, 1978, in which the defendant affirmed its auditor's denial of a nonresident status under ORS 316.027 to the plaintiffs for the income tax year 1974.

ORS 316.027 states:

"(1) 'Resident' or 'resident of this state' means:

"(a) An individual who is domiciled in this state unless he (A) maintains no permanent place of abode in this state, *and (B) does maintain a permanent place of abode elsewhere,* and (C) spends in the aggregate not more than 30 days in the taxable year in this state; or

"(b) An individual who is not domiciled in this state but maintains a permanent place of abode in this state and spends in the aggregate more than 200 days of the taxable year in this state is presumed to be a resident unless he proves that he is in the state only for a temporary or transitory purpose." (Emphasis supplied.)

The following statement of facts is taken from the defendant's order, at 2-3:

"* * * Petitioners [plaintiffs] purchased a home in Oregon in 1963. From April, 1967, to June 1976, they lived abroad on assignments by [the] International Monetary Fund. In the course of this employment, Petitioners had lived in Uganda, Kenya, Jamaica, and Barbados. In the year and a half from the time the Kenya assignment ended until the next assignment developed, Petitioners lived in their Oregon home. Assignments were usually of two years' duration with a hiatus between assignments. In December, 1973 Petitioners had completed an assignment in Jamaica. From December, 1973 until May 1, 1974 Petitioners lived in Seattle, Washington. Their next assignment had not been determined. Their Oregon property had been rented to others under a two-year lease which was to expire on May 1, 1974. Mr. Ramsey used this time to attend school in Seattle. The next assignment was to be a two-year stint in Barbados. Petitioners returned to the Oregon house on May 1, 1974 for the sole purpose of finding a new tenant. The house contained only a bed. Petitioners

took meals at the home of a niece. Mr. Ramsey stayed in the home until May 9, 1974 and Mrs. Ramsey remained until May 21 or 22, when a new tenant was found.

"When they arrived in Barbados, Petitioners initially stayed in a motel but soon rented a succession of houses. Due to the high cost of rent during the tourist season, they were required to move from house to house to the advantage of owners' brief absences. Eventually they found a house for a longer period of time. Their employer absorbed part of their rent expenses. [At the trial of this matter, it became apparent that this paragraph in the defendant's statement of facts was inaccurate. The evidence showed that plaintiffs spent two weeks in a hotel upon their arrival in Barbados. On June 1, 1974, they moved into a house where they stayed until December 27, 1974. They took temporary lodging for a few days, running into 1975, until they found another house in which they lived for about eight months.]

"Petitioners did attempt to sell the [Oregon] property at one time when renting proved difficult. Most of their friends live in Seattle, Washington. They came to Oregon originally to be near Mrs. Ramsey's aged mother who has since died. Petitioners' son attends school in Seattle. Their 1973-1974 stay in Seattle was stop-gap only. They did not intend to stay in Seattle permanently. The house in Oregon was intended as a symbol of stability. Petitioners believe Oregon is a great state and they plan to continue living here until the taxes become too punitive."

The plaintiffs accept the legal conclusion that they were Oregon domiciliaries in 1974; they only seek recognition of an exempt tax status in that year within Oregon's statutory exception in its definition of "resident." It is undisputed that they met the first and third requirements of ORS 316.027(1)(a).

The basic problem implicit in this suit has long plagued tax administrators. Prior to the adoption of the Personal Income Tax Act of 1969, the state followed the classical concept of "domicile" (and still does). In its personal income tax statute, the use of the word "resident" and the word "domicile" was substantially identical. ORS 316.010(14) (1967 Replacement

Part). The state imposed its personal income tax upon all of the income of a domiciliary, no matter where derived, within or without the state.[1] The new definition in the 1969 act must have been intended to give some tax relief to those domiciliaries whose income is unquestionably within the state's jurisdiction to tax but who, within the legislative policy expressed in ORS 316.027, are not in a position fully or substantially to utilize the state's services.

The problem which confronts the court is the determination of the meaning of "permanent place of abode" as used in ORS 316.027(1)(a). "Abode" is a word often used in the statutes. It has many synonyms: habitation, residence, dwelling, lodging, quarters, home. There is a general understanding that it signifies a building or shelter which is the dwelling place of a person. It must be distinguished, in this suit, from "domicile,"[2] in recognition of the legal adage that an individual may have several residences (or abodes), but only one domicile, at any given time.

The word "permanent," as a modifier of "abode," causes confusion in connection with the patent legislative intent found in ORS 316.027(1) to give tax relief to certain domiciliaries. "Permanent" carries the connotation of lasting, unchangeable, enduring. It cannot have that meaning in the present context. As is well known, a domiciliary, in his own state, is deemed to have a "permanent abode," even in rented premises, which he is free to leave as interest or pleasure may suggest, but which he has no present intention of changing or desire to change. It is reasonable to assume that no greater burden is placed by

---

[1] This imposition was ameliorated by the allowance of a credit for taxes paid to other states or countries upon income taxed by Oregon, ORS 316.475 (1967 Replacement Part), a provision which is still continued for the benefit of "residents." ORS 316.082.

[2] *See Zimmerman v. Zimmerman,* 175 Or 585, 155 P2d 293 (1945), for a discussion of the concept of domicile and the problems of construction arising when a statute uses "resident" or "inhabitant" in lieu of "domiciliary."

ORS 316.027 on the nonresident domiciliary in respect to "permanent place of abode" than upon the resident domiciliary. This interpretation is supported by an examination of *Flather v. Norberg,* — RI ——, 377 A2d 225 (1977),[3] construing RI Gen Laws 1956, § 44-30-5(a)(1), which is identical with Oregon's ORS 316.027(1)(a) and (b). The admitted facts in that case are that Charles R. Flather, a career naval officer, sought income tax treatment as a "nonresident" for the tax year 1972, pursuant to the Rhode Island statute. Beginning in September 1956, Commander Flather had been stationed with the United States Navy outside the State of Rhode Island, living in at least eight different states and one territory. Generally his family accompanied him to these various locations; however, in July 1971, he and his wife separated and for eight months thereafter he lived alone in bachelor officer quarters in San Francisco. During the next six weeks, he was in command of a naval vessel at sea. In July, he was assigned to Washington, D.C., where, up to the time of the hearing, he lived in an apartment with a month-to-month tenancy in Arlington, Virginia. There was no question but that he was a Rhode Island domiciliary and that he had spent less than 30 days in the state during 1972. He argued that the Rhode Island tax administrator had equated "permanent place of abode" with "domicile" by applying the same standard to each determination. The Rhode Island court agreed, — RI at ——, 377 A2d at 227-228, stating:

"* * * In his decision the hearing officer stated that '[a]s in "domicile," a "permanent place of abode" is determined by physical presence and *the intent of the taxpayer to establish a permanent* abode.' (Emphasis added.) While a literal reading of § 44-30-5(a)(1), giving full effect to the word 'permanent,' would support the tax administrator's position, it results in the inescapable

---

[3]Rhode Island's Gen Laws 1956, § 44-30-5(a)(1), and a New York statute, codified in 59 McKinney's Consolidated Laws of New York, § 605(a)(1), apparently served as the model for the 1969 Oregon statute, ORS 316.027(1)(a) and (b), all using substantially identical wording.

conclusion that the words 'domicile' and 'permanent place of abode' are synonymous. Such an interpretation would render the section inefficacious, a result which would violate the principle of statutory construction which declares that 'no court will ascribe to a legislature the intent to enact a law inefficacious and nugatory.' *Town of Scituate v. O'Rourke,* 103 R.I. 499, 509, 239 A.2d 176, 182 (1968). Furthermore, statutes should not be read literally when to do so would result in a patent absurdity. *State v. Haggerty,* 89 R.I. 158, 161, 151 A.2d 382, 384 (1959)."

The court then pointed out that "residence is sometimes construed to mean domicile and the terms are often used to connote the same meaning * * *" and discusses the background of the illusive word "residence." The court concludes (— RI at ——, 377 A2d at 229):

"We believe that such a strict interpretation of the word 'permanent' not only militates against an efficacious reading of the statute but also undermines the intended purpose of the statute as we have interpreted it. In our view the establishment of a permanent place of abode requires the maintenance of a fixed place of abode over a sufficient period of time to create a well-settled physical connection with a given locality. *See* Reese & Green, *That Elusive Word, 'Residence,' supra* at 575. Significant factors, among others to be considered in determining whether an individual maintains such a permanent place of abode, are: (1) the amount of time he spends in the locality (2) the nature of his place of abode (3) his activities in the locality and (4) his intentions with regard to the length and nature of his stay. We conclude that the hearing officer erred as a matter of law in misconstruing the phrase 'permanent place of abode' to possess qualities which properly belong only to the word domicile. * * *"

■ ORS 316.027(1)(a) and (b), along with the problems of "domicile," "residence," and "abode," will continue to create administrative and judicial problems of interpretation because the facts can vary widely and problems of degree can be presented in each instance. It appears clear that the legislature was

[ 483 ]

intending to give tax relief to the "domiciliary nonresident" who was gaining comparatively little or no benefit from the state in the form of governmental services and protection, for which taxes are imposed, commensurate with the personal service income tax which he would otherwise be required to pay.

■ In the present suit, it appears that the only connection of the plaintiffs with the state in 1974 was their intention of maintaining their domicile herein, their ownership of a residential property, and the receipt of some rentals from that property during the year. These particulars are not enough to deny the plaintiffs the status of nonresident domiciliaries for the year in question. To hold otherwise would defeat the legislative intent in a case involving almost the simplest factual situation imaginable.

Inasmuch as plaintiffs have paid the taxes in full as demanded by the defendant for the contested year, any amount overpaid, as determined under this decision, must now be refunded by defendant, together with statutory interest. The defendant's Order No. I 77-57 is set aside and held for naught. Plaintiffs are awarded their costs.

The case of *Vallee v. Dept. of Rev.,* 5 OTR 693 (1974), construing ORS 316.027, appears, in retrospect, to be one in which the court was not fully advised. To the degree that that decision conflicts with this, *Vallee* shall be deemed superseded.