IN THE OREGON TAX COURT
MAGISTRATE DIVISION

Walter W. BACKMAN,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC-MD 980924)

David L. Canary, Garvey, Schubert & Barer, Portland, argued the cause for Plaintiff.

James Wallace, Assistant Attorneys General, Department of Justice, Salem, argued the cause for Defendant.

Decision for Defendant rendered October 25, 1999.

### DAN ROBINSON, Magistrate.

Plaintiff appeals Defendant's assessments of tax, penalties, and interest with respect to his personal income for the tax years 1988, 1989, 1990, 1991, and 1993.[1] Trial was held September 9, 1999. Plaintiff was represented at trial by David L. Canary, Attorney at Law. Plaintiff testified on his own behalf. Also testifying for Plaintiff were his father Sam Backman and his brother Mike Backman. Defendant was represented by James Wallace, Assistant Attorney General. Witnesses for Defendant were Laurie Fery and Martha Shotwell.

## STATEMENT OF FACTS

Plaintiff was born and raised in Oregon. He graduated from high school in Aloha, Oregon, in 1977. Plaintiff filed 1977 Oregon tax returns. He was drafted that year by the New York Mets to play baseball in the minor leagues, during which time he played short seasons, made minimal income, and returned to Oregon when not playing baseball. Plaintiff played three years in the minors before being called up to the major leagues by the Mets in 1980. Plaintiff testified that after joining the major leagues he continued to return to Oregon during the off-season until 1986. Plaintiff also filed a 1994 Oregon tax return.

Plaintiff married his first wife, who was also raised in Oregon, in November 1981. The wedding occurred in Oregon. They had four children, three of whom were born in Oregon.[2] Plaintiff testified that his wife and children lived with him in each city where he played major league baseball (New York, Minnesota, Pittsburgh, etc.). Plaintiff returned to Oregon during the off-season until 1986, although it is not clear where he and his family stayed during the winter.

---

[1] The Complaint was amended at the initial case management conference to add the 1988 tax year and the court granted Defendant's Motion to Dismiss the 1992 tax year because there had not been an assessment issued by Defendant.

[2] The first child was born in New York May 5, 1981. The second child was born January 7, 1986, the third child was born April 13, 1993, and the fourth child was born April 26, 1995. Plaintiff's wife returned to Oregon for the birth of the second and third children, while Plaintiff remained in New York (1986) and Washington (1993) plying his trade. Presumably, Plaintiff's wife was living in Oregon when the fourth child was born in 1995.

Plaintiff played major league baseball from 1980 until May or June of 1993. He played eight years for the New York Mets, and was then traded in 1989 to the Minnesota Twins. After a year with the Twins, Plaintiff spent the 1990 season playing for the Pittsburgh Pirates. He then played for the Philadelphia Phillies in 1991 and 1992. For the 1993 season, Plaintiff was picked up by the Atlanta Braves, but prior to the start of the season was traded to the Seattle Mariners. Plaintiff only played about two months for the Mariners before retiring.

During the years at issue, Plaintiff owned two homes in Oregon; one in Hillsboro that he purchased in 1983 and another in Forest Grove that was purchased in either 1984 or 1987.[3] The Forest Grove home was large (over 5,000 square feet) and located on approximately 29 acres of land, much of which was used for the growing of trees. Plaintiff testified that the home was an investment and a stopping ground to see his family on his way back and forth to Hawaii. Plaintiff's father and brother testified that Plaintiff would stop in Oregon for about a week on both sides of his trips to and from Hawaii. The Hillsboro home was purchased by Plaintiff for his parents, who lived in the home until 1991, when they moved to Plaintiff's other home in Forest Grove. Plaintiff's parents lived in the Forest Grove home for two years before moving to a home they had purchased in Ione, Oregon.

Plaintiff maintained his Oregon Driver License by renewal, originally issued in 1975. In addition, Plaintiff registered a number of vehicles in Oregon and testified that he regularly kept many vehicles at the Forest Grove home. He also had an automobile and a motorcycle in Hawaii for a few of the years he made that locale his winter residence. The automobile was shipped to Hawaii from Washington in 1989.

Plaintiff and his family lived in rented homes in New York for seven years before buying a home there in 1988.[4]

---

[3] Defendant's Exhibit G, page 434 seems to indicate that the Forest Grove home was purchased in 1987, but there was also testimony that the Forest Grove home may have been purchased in 1984. Perhaps the 1987 date related to an adjustment in the lot line where there had been an easement.

[4] An Oregon Department of Revenue auditor testified for the Defendant that the New York home was purchased in 1988, referencing Defendant's Exhibit G,

After the 1988 season, Plaintiff was traded to the Minnesota Twins. Plaintiff moved to Minnesota with his wife and children, where he bought a house before the start of the 1989 season.[5] After leaving Minnesota, Plaintiff and his family rented homes in Pennsylvania and Washington.

In 1986, Plaintiff began going to Hawaii during the off-season, which roughly runs November through February. Spring training began in Florida officially in March, but Plaintiff would arrive early to settle in with his family. Plaintiff's wife and children apparently went with him to Hawaii, where they leased a home each year. Plaintiff operated a charter fishing business in Hawaii from 1988 or 1989 until 1992. Plaintiff did not have a business in Oregon.

Defendant introduced evidence of several events showing Plaintiff was or may have been somewhere other than Hawaii at certain times during the off-season, when, according to testimony, Plaintiff was in Hawaii. For example, Plaintiff's wife was served a summons at the Forest Grove address on December 23, 1987. Plaintiff signed some loan papers at an Oregon credit union on January 8, 1988. Plaintiff was interviewed by telephone at his Forest Grove home on December 8, 1988, by the *Oregonian*. Plaintiff's wife was again served a summons at the Forest Grove home on December 8, 1988, and on February 8, 1989. Plaintiff was in Minnesota to purchase a home on or about January 9, 1989, and he received a speeding ticket in Wasco County, Oregon, on March 6, 1990.

For 1988, Plaintiff's exhibits show that he filed non-resident/part-year resident tax returns in New York and California. In 1989, Plaintiff's California return, filed as a nonresident, stated that he was a resident of Minnesota, while his Minnesota return was filed as a part-year resident.[6]

---

page 447. Upon further review by the court, it is difficult to ascertain the purchase date by reference to that exhibit. In the absence of evidence to the contrary, however, the court accepts that the home in New York was purchased in 1988.

[5] In the absence of evidence to the contrary, the court accepts the auditor's testimony referencing Defendant's Exhibit G, page 439, that the Minnesota home was purchased in 1989.

[6] The part-year noted on the return during which Plaintiff was a resident of Minnesota is 4/1/89-9/30/89. It is notable that a letter from the Minnesota Department of Revenue indicates that Plaintiff did not file tax returns for the tax years 1978-95.

Plaintiff filed California, Pennsylvania, and New York returns in 1990 as a nonresident/part-year resident.[7] No state tax returns were shown for 1991 or 1993. Plaintiff's Forest Grove address is used for each of his state tax returns as well as his federal tax returns for 1988-91.

Through the many years of playing for various teams in various cities, Plaintiff had a number of bank accounts. For the years at issue, Plaintiff maintained at least one bank account in Oregon. While running his charter business, he had an account in Hawaii under "Wild Boys," the name of the charter fishing business. In addition, Plaintiff had accounts in Virginia, Minnesota, and Pennsylvania, among others.

When he retired in 1993, Plaintiff at some point came back to Oregon. His wife had apparently returned to Oregon with the children prior to his arrival. It is not clear what Plaintiff did for the remainder of the 1993 year after retiring. He testified that he stayed in Seattle and then went to Alaska. Plaintiff admitted that he returned to Oregon at some point in 1993, and acknowledged on direct examination that he probably spent more than 30 days in Oregon that year. Plaintiff's brother testified that Plaintiff returned to his Forest Grove home for roughly two weeks and then went to Prineville, Oregon, to fish on the Crooked River. According to his brother, Plaintiff stayed in a motor home. Oregon Fish and Wildlife issued combination hunting and fishing licenses to Plaintiff February 5, 1993, July 13, 1993, and September 6, 1993.

Plaintiff's wife was served with a summons at the Forest Grove home on February 24 and again on April 26, 1993. Plaintiff's two school-aged children were transferred from school in Forest Grove in May 1993. In November 1993, Plaintiff registered a 1991 Chevy Malibu with the Oregon Department of Motor Vehicles.

---

[7] A letter from the New York Department of Taxation and Finance indicates that Plaintiff did not file New York returns for 1990.

## ANALYSIS

As a preliminary matter, the court has dismissed Plaintiff's Complaint as to tax year 1992 because Defendant did not yet assess the account for that year. Defendant's Motion to Dismiss, included in its Answer filed on April 29, 1998, is granted pursuant to ORS 305.265(15) and ORS 305.275(1).

■ Turning to the years properly before the court, Oregon imposes a state income tax on the taxable income of every resident of this state. ORS 316.027 (1997). A resident is defined by statute as:

"(a) An individual who is domiciled in this state **unless** the individual:

"(A) Maintains no permanent place of abode in this state;

"(B) Does maintain a permanent place of abode elsewhere; and

"(C) Spends in the aggregate not more than 30 days in the taxable year in this state; or

"(b) An individual who is not domiciled in this state but maintains a permanent place of abode in this state and spends in the aggregate more than 200 days of the taxable year in this state unless the individual proves that the individual is in the state only for a temporary or transitory purpose."

ORS 316.027(1) (emphasis added).[8]

Residency is thus statutorily equated with domicile. Was Plaintiff domiciled in Oregon?[9] Domicile is a common-law concept composed of two components: "a fixed habitation

---

[8] This reference to the Oregon Revised Statutes (ORS) is to the 1987, 1989, and 1991 versions of the law, which are identical.

[9] The Department of Revenue has defined "domicile" in its administrative rules as follows:

" 'Domicile' means the place an individual considers to be their true, fixed, permanent home. A person can only have one domicile. An individual acquires a domicile by living there, even for a brief period of time, with no definite intention of moving. It is the place to which a person has the intent of returning after an absence. Factors that contribute to determining domicile include family, business activities and social connections."

OAR 150-316.027(1)(a).

or abode in a particular place" and "an intention to remain there permanently or indefinitely." *dela Rosa v. Dept. of Rev.*, 313 Or 284, 289, 832 P2d 1228, 1231 (1992) (citing *Elwert v. Elwert*, 196 Or 256, 265, 248 P2d 847 (1952)). "An individual acquires a domicile by living there, even for a brief period of time, with no definite intention of moving. It is the place to which a person has the intent of returning after an absence." OAR 150-316.027(1)(a). The determination, while based on intent, must be established by all the facts and circumstances. *dela Rosa*, 313 Or at 289-90.

■■ Plaintiff was domiciled in Oregon through 1986. He was raised in Oregon and obtained an Oregon Driver License. Moreover, Plaintiff testified that, until then, he and his family would return to Oregon during the off-season. A person can have only one domicile at a time. *Zimmerman v. Zimmerman*, 175 Or 585, 591, 155 P2d 293 (1945); OAR 150-316.027(1)(a). "The law is also clear that once domicile is established or determined to be in a particular location, it remains there until the person establishes a new domicile." *Duncan v. Dept. of Rev.*, OTC-RD No. 4315, WL 792454 (Nov 3, 1998). The question then becomes whether Plaintiff changed his domicile to New York by 1988, which is the first year before the court. "In order to change domicile, an individual must not only establish a residence in the new place but have an intention to abandon the old domicile and acquire a new one." *Davis v. Dept. of Rev.*, 13 OTR 260, 264 (1995). The true intent of an individual is discerned by his or her overt acts.

Plaintiff clearly established partial year **residence** in New York, where he lived with his family and bought a home in 1988. The acquisition of the home suggests Plaintiff intended to acquire a new domicile in New York. Typically the purchase of a home coupled with a job in a given locale is sufficient to establish domicile in that state. However, the totality of the facts in this case refutes the conclusion Plaintiff abandoned his Oregon domicile. The court must analyze "each step of the attempted change in domicile." *Hudspeth v. Dept. of Rev.*, 4 OTR 296, 301 (1971). Of course, a person's acts are typically motivated by factors other than the tax implications. Nonetheless, the overt acts in relation to the particular time at issue are most significant. *Id.*

Other than the home in New York, Plaintiff established few real connections to that state. He did not register his vehicles in New York, obtain a New York Driver License, register to vote in New York, or acquire New York hunting and fishing licenses, all of which are indicia of an intent to change domicile. As Plaintiff moved between major league baseball teams, he kept his ties with Oregon. Oregon was the one constant element in Plaintiff's life. It was here that he owned a home (two of them), registered most of his vehicles, maintained bank accounts, and renewed his driver license. Moreover, Plaintiff used his Forest Grove address on his federal tax returns, and obtained resident hunting licenses. As the facts pointing to Oregon continue to stack up, it is difficult to accept Plaintiff's explanations dismissing the apparent significance of each event.

■ Having found that Plaintiff was domiciled in Oregon for the tax years at issue, the question now is whether he met the requirements of being a nonresident domiciliary under ORS 316.027(1)(a). A nonresident domiciliary is one who is domiciled in this state, but does not maintain a permanent place of abode in this state, maintains a permanent place of abode elsewhere, and whose time spent in this state does not exceed 30 days in the aggregate. ORS 316.027(1)(a)(A)-(C). Presumably tax relief is granted because the legislature recognized that the services and protection provided by the state through the use of collected tax revenue accord little or no benefit to the nonresident domiciliary. *See Ramsey v. Dept. of Rev.*, 7 OTR 478, 483-84 (1978) (construing legislative intent). All three elements of the exception must be found in order for the domiciliary to be treated as a nonresident for Oregon tax purposes. *See* ORS 316.027(1)(a).

"Permanent place of abode" should not be confused nor equated with "domicile." The main differentiation is that a person can have multiple abodes (residences), but only one domicile. *See* OAR 150-316.027(1)(a), (c); *Ramsey*, 7 OTR at 482-83. Defendant has adopted an administrative rule that defines "permanent" as "fixed [and] enduring" and "place of abode" as "the location of a physical building * * * in which the taxpayer lives and sleeps." OAR 150-316.027(1)(b), (c).[10]

---

[10] OAR 150-316.027(1) provides, in part, that:

"There is a general understanding that [abode] signifies a building or shelter which is the dwelling place of a person." *Ramsey*, 7 OTR at 481. A permanent abode is one in which a person "has no present intention of changing or desire to change." *Id.* at 481. " '[T]he establishment of a permanent place of abode requires the maintenance of a fixed place of abode over a sufficient period of time to create a well-settled physical connection with a given locality.' " *Ramsey*, 7 OTR at 483 (quoting *Flather v. Norberg*, 377 A2d 225, 229 (RI 1977)).

The court concludes that Plaintiff has met the first and second requirements of the exception to domicile in that he did not have a permanent place of abode in Oregon and he did have a permanent place of abode elsewhere. Plaintiff did not make his Oregon home his permanent dwelling or lodging during the years in question. He spent most of his time in New York, Minnesota, and elsewhere during the baseball season, living in homes he rented or owned. He traveled to Hawaii in the winter, making only brief stops in Oregon on the way over and back.

Turning to the third and final requirement, Plaintiff conceded in testimony, and other evidence supports, that he was in Oregon an aggregate of at least 30 days in calendar year 1993. The other years are less clear. Plaintiff testified that he was never in Oregon for any of the years at issue over 30 days other than in 1993, but rather only stopped in Oregon to hunt and visit his family on his way to and from Hawaii at the beginning and end of each season. Defendant presented evidence that Plaintiff was in Oregon at various other times during the off-season when he was supposed to be

---

"(b) 'Permanent' means fixed, enduring and lasting in nature. The taxpayer has no intent to go elsewhere for a period of time or the stay is for an indefinite period. The taxpayer does not consider the stay temporary or transitory, so it is the place to which the taxpayer has the intention of returning whenever absent. A person is deemed to have a 'permanent abode' even in rented premises, which he or she is free to leave at will, but from which the person has no present intent or desire to change. Factors that contribute to permanence include the amount of time spent in the locality, the nature of the place of abode, activities in the locality and the taxpayer's intentions with regard to the length and nature of the stay.

"(c) 'Place of abode' means the location of a physical building, structure, or vehicle in which the taxpayer lives and sleeps. It is distinguishable from 'domicile' in that an individual may have several residences (or abodes), but only one domicile, at any given time."

other times during the off-season when he was supposed to be in Hawaii, inviting the court to assume Plaintiff was in fact in Oregon more than 30 days. That evidence included a number of incidents in which Plaintiff's wife was served with a summons in the months of December, January, and February of various years. There was a newspaper article introduced into evidence reporting that Plaintiff was in Oregon in December 1988, for a telephone interview from his Forest Grove home. And Plaintiff was given a speeding ticket in March 1990 in Oregon (Wasco County). Plaintiff testified that he was in Oregon only for a few days or less at the time of each of those events.

Because the evidence does not show that Plaintiff spent more than an aggregate of 30 days in Oregon for the tax years 1988 through 1991, the court finds that Plaintiff was a nonresident domiciliary of Oregon for that time. Plaintiff concedes, and other evidence supports, that he was in Oregon at least 30 days total in calendar year 1993.

## CONCLUSION

IT IS THE DECISION OF THE COURT that Plaintiff was a nonresident domiciliary of Oregon for the tax years 1988, 1989, 1990, and 1991, and that Plaintiff was a resident of Oregon for the tax year 1993; therefore, Plaintiff is subject to the jurisdiction of Oregon for that year for purposes of state income tax liability. Plaintiff's Complaint is dismissed as to tax year 1992.