DECISION
This appeal involves Plaintiff's Oregon income tax liability for 2002, 2003, 2004, and 2005. The primary dispute is over Plaintiff's residency status. A related issue is whether and in what state (if any) is Plaintiff allowed to claim a credit for taxes paid to another state. A secondary issue is whether Plaintiff had unreported income in 2002 and 2005. Finally, for 2002, 2003, and 2004, Defendant imposed 100 percent penalties for failure to file returns for three consecutive years, and for 2003 and 2004, interest on underpayment of estimated tax.
Trial on the matter was held June 23, 2010. The parties were given additional time to submit post-trial briefs and other relevant documents relating to the matters before the court. The court received the final documents August 5, 2010.
 I. STATEMENT OF FACTS
Plaintiff presented very little testimony at trial on any of the issues, choosing instead to respond primarily in writing.
In his post-trial written materials, Plaintiff provided the following relevant factual information. Plaintiff moved from Oregon to Sacramento, California, in April of 1996 "to take a job with the State Comptroller's Office as Division Chief over the Division of Accounting and Reporting." (Ptf's Post-Trial Memo at 2.) In taking that position, Plaintiff left his job in Salem, *Page 2 
Oregon, where he was employed "as the Statewide Financial Management System Project Director at the State Comptroller's Division within the Department of Administrative Service." (Id.) Plaintiff further stated that "[a]s the Division Chief of the division of 130+ staff and budget of $10 million + I was expected to be available to the elected State Comptroller and staff five days a week at my office * * * in Sacramento, California." (Id.) Plaintiff states that he changed jobs in late 2001, going "to work for KPMG LLP in Sacramento, California, where I work today [July 2010]." (Id.)
Plaintiff worked in California for the tax years at issue (2002, 2003, 2004, and 2005). Plaintiff was married at the time. His wife lived and worked in Oregon. Plaintiff and his wife owned a home in Portland, Oregon, that they had purchased in 1993. After Plaintiff left Oregon for his job in California in 1996, he rented a room or an apartment in California. According to Defendant's standard residency questionnaire that Plaintiff filled out, through at least 2005, Plaintiff maintained his Oregon's driver license, was registered to vote in Oregon, had at least one vehicle registered in this state, and had at least one Oregon bank account and an Oregon safe deposit box. (Def's Ex N.)
Plaintiff filed Oregon nonresident returns for tax years 2002, 2003, 2004, and 2005, claiming refunds each year in amounts between $3,632 (2002), $3,763 (2003), $3,934 (2004), and $3,973 (2005). (Def's Exs O, P, Q, R.) All of the returns were prepared by H R Block, and filed as joint returns with Plaintiff and his former spouse Collette. (Id.) The returns were all dated August 31, 2006, and stamped as received by Defendant September 5, 2006. (Def's Exs O and O-1, P and P-1, Q and Q-1, R and R-1.) Plaintiff reported wages he deemed to be sourced to Oregon in the Oregon column of the returns, and all of the couple's income in the federal column. It appears Plaintiff reported Collette's income as Oregon sourced and his own as *Page 3 
California source income. The vast majority of the total (joint) income was earned by Plaintiff.
The Oregon nonresident returns were all untimely. One of Defendant's adjustments was the imposition of a 100 percent penalty for tax years 2002, 2003, and 2004, because the returns for those three consecutive years were not filed by the due date of the third year's return (i.e., 2004 return, with an April 15, 2005 filing deadline.
The address on each of Plaintiff's Oregon returns for the years at issue (2002 through 2005) is 2306 SW Madison St., Portland, OR 97205-1025, which is the physical address location for the home owned by Plaintiff and Collette, and was where Collette was living. (Id.) Plaintiff used the same address on his federal income tax returns for the years at issue. Plaintiff prepared his own returns from 1996 through 2001. For those years, Plaintiff filed Oregon part-year resident returns.
While Plaintiff's testimony was brief, he closed with the following comments. Plaintiff agreed that he was an Oregon resident for the years at issue, but argued that the 100 percent penalty Defendant imposed is "not fair" because 80 percent of his income was derived from California, and in fairness, the penalty should only apply to the Oregon-source income. Plaintiff also believes that the credit for taxes paid to another state should be allowed on his Oregon returns, which would greatly reduce the penalty. Plaintiff did not address the additional income Defendant added for 2002 and 2005. Defendant added $35,493 for the 2002 tax year and $169,599 for the 2005 tax year. (Def's Exs L, M.)
However, in his post-trial written submissions, Plaintiff changed his position on residency, arguing that he was not a resident of Oregon for 2002 through 2005. (Ptf's Post-Trial Memo at 2, 6.) Plaintiff also takes exception with the credit for taxes paid to another state. *Page 4 
Defendant insists that Plaintiff was a full-year Oregon resident for all the years at issue, and that Plaintiff has conceded that point. Defendant further argued that, by law, the credit for taxes paid to another state goes on Plaintiffs California returns. Finally, Defendant argues that the court lacks jurisdiction over the issues of penalty and interest.
 II. ANALYSIS
The main issue in this case is residency. If Plaintiff was in fact a nonresident for the years at issue, the magnitude of the other issues, in terms of dollars, decreases significantly: the majority of the additional income Defendant added is subtracted and the 100 percent penalties decrease greatly (because the penalty is tied to the additional tax determined to be owing, which would much less). The issue of the credit for taxes paid to another state is a bit more complicated because it is contingent upon the court's determination of residency, the source of the income, and the law as it pertains to how the credit is taken (i.e., on the Oregon or California return). A. Residency/Domicile
Oregon imposes a state income tax on every resident of this state, every part-year resident (based on the proportion of Oregon-source income total income), and every full-year nonresident with Oregon-source income. ORS 316.037.[1]
ORS 316.027 defines "resident" as:
 "(1) For purposes of this chapter, unless the context requires otherwise:
 "(a) "Resident' or `resident of this state' means: *Page 5 
 "(A) An individual who is domiciled in this state unless the individual:
 "(i) Maintains no permanent place of abode of this state;
 "(ii) Does maintain a permanent place of abode elsewhere; and
 "(iii) Spends in the aggregate not more than 30 days in the taxable year in this state."
ORS 316.027 (emphasis added.)[2] Residency is thus statutorily equated with domicile.
Domicile is a common law concept comprised of two components: (1) "a fixed habitation or abode in a particular place" and (2) "an intention to remain there permanently or indefinitely."dela Rosa v. Dept. of Rev.,313 Or 284, 289, 832 P2d 1228, 1231 (1992) (citing Elwert v.Elwert, 196 Or 256, 265, 248 P2d 847 (1952) (internal quotation marks omitted)). That determination, while based on intent, must be established by all the facts and circumstances. dela Rosa,313 Or at 289-290.
Oregon Administrative Rule (OAR) 150-316.027(1)(1)(a) defines "domicile" as "the place an individual considers to be the individual's true, fixed, permanent home * * * [and] the place a person intends to return to after an absence."[3] While an individual can have more than one residence, he "can have but one domicile." dela Rosa, 313 Or at 289 (internal quotation marks and citation omitted); see also Zimmerman v. Zimmerman,175 Or 585, 591, 155 P2d 293 (1945); OAR 150-316.027(1)(a). "The law is also clear that once domicile is established or determined to be in a particular location, it remains there until the person establishes a new domicile." Duncan v. Dept. ofRev., 1998 WL 792454, TC No. 4315 (Nov 3, 1998).
It is clear to the court that Plaintiff was originally a resident of Oregon. He and his wife Collette owned a home in Portland, where they both lived, and they both worked in Oregon. *Page 6 
Plaintiff had a full-time job with the State of Oregon in Salem, Oregon, where he was in a high level management position as Project Director for the Statewide Financial Management System with the Department of Administrative Services. They had Oregon driver licenses, vehicles registered in this state, were registered to vote in Oregon, etc. More importantly, there is no evidence that Plaintiff had ties with any other state prior to moving from Oregon to take the job in California in April of 1996.
To effect a change of domicile, "three elements are necessary: (1) the person must establish a residence in another place; (2) form an intent to abandon the old domicile; and (3) intend to acquire a new domicile." White v. Dept. ofRev., 14 OTR 319, 321 (1998) (citation omitted). Given the inherent difficulties in ascertaining intent, "triers of the fact of domicile rely heavily upon the overt acts of the individual as true indicators of his state of mind. Nevertheless, the whole aim of the inquiry is to discern the true intent." Hudspeth v. Dept. ofRevenue, 4 OTR 296, 298-99 (1971). Thus, "determination of an individual's domicile is based on intent supported by facts and circumstances rather than merely the statements of the individual."Butler v. Dept. of Rev., TC-MD No 050801D, WL 2041284 at *4 (July 18, 2006). Factors contributing to a determination of domicile "include family, business activities[,] and social connections." OAR 150-316.027(1)(1)(a).
Plaintiff has taken inconsistent positions on the issue of residency/domicile. Plaintiff filed non-resident Oregon returns for 2002 through 2005 and, during the early stages of the appeal, insisted he was a California resident. Those returns were prepared by H R Block. Plaintiff prepared his own returns from 1996 through 2001 and filed Oregon part-year resident returns for those years. Plaintiff telephoned Defendant at some point after March 3, 2008, and, according to the note entered into Defendant's electronic record-keeping system, told the auditor that he *Page 7 
changed his residency from Oregon to California in 2007. (Def's Ex T-1.) At trial, Plaintiff conceded that he was in Oregon resident for the four years at issue. Finally, in his Post-Trial Memorandum, Plaintiff takes the position that he was not a resident of Oregon when he filed his returns for 2002 through 2005. (Ptf's Post-Trial Memo at 2, 6.)
Plaintiff argues that he was not an Oregon resident between 2002 and 2005 because he "did not think of Oregon as [his] permanent home; and Oregon was not the center of [his] financial, social [or] family life;" and he did not intend to come back to Oregon when he was away. (Ptf's Post-Trial Memo at 3.) Plaintiff further argues that he was not "domiciled" in Oregon because he did not maintain a permanent place of abode in this state, which is a statutory requirement under ORS 316.027(1)(a)(A)(i). (Id. at 4.) Plaintiff seems also to argue that, regardless of whether he is found to have been "domiciled" in Oregon, he was not physically present in the state the requisite minimum number of days to qualify as an Oregon resident under ORS 316.027 (1)(a)A)(iii), although that argument is not at all well-developed. (Id. at 9.)[4] That latter status is referred to by Defendant as "special-case Oregon resident." Plaintiff, however, goes on to argue that "the number of days is irrelevant based on my belief that I should be evaluate[d] using 316.027(1)(a)(B) and not 316.027(1)(a)(A)." (Id.)
Defendant responds in relevant part that Plaintiff was a full year Oregon resident for all of the years at issue (2002, 2003, 2004, and 2005) because Plaintiff did not intend to abandon his Oregon domicile. (Def's Resp to Post-Trial Memo at 2.)
Returning to the three-part test used to determine whether there has been a change in domicile, there can be little doubt that Plaintiff satisfies the first requirement (residence in *Page 8 
another state) because he rented living quarters in California when he moved there in 1996. Oregon has long held that the term "residence" is synonymous with abode or dwelling place.Ramsey v. Dept. of Rev., 7 OTR 478, 481 (1978). And, "[t]here is a general understanding that [an abode] signifies a building or shelter which is the dwelling place of the individual." Id.
The two remaining factors are more subjective, as they require the court to determine intent. Specifically, did Plaintiff "intend" to abandon his Oregon domicile and acquire a California domicile? On the evidence before it, the court does not believe that to be the case. While it is always difficult to ascertain a person's thoughts and intentions, and recognizing that people generally do not order their lives with much, if any consideration of the tax implications of a move, the court, as the trier of fact, relies on Plaintiff's overt acts as an indication of his state of mind. Hudspeth,4 OTR at 298-299.
Although Plaintiff took a full-time job in California in 1996, he rented a room or apartment there and continued to own a home in Portland, Oregon, where his wife Collette resided. The two owned that home for all the years at issue. Plaintiff retained his Oregon driver license, Oregon voter and vehicle registrations, and continued to have at least one bank account in Oregon and a safe deposit box in this state. Other than his job and the renting of a room or apartment in California, there is little indication that Plaintiff established any ties, legal or social, to California. Plaintiff acknowledges that he regularly returned to Oregon after "moving" to California. In the end, the court is not persuaded by a preponderance of the evidence that Plaintiff abandoned his Oregon domicile and acquired a domicile in California. The court has the impression that Plaintiff took the job in California because it offered a better career opportunity, but that Collette did not want to give up her job in Oregon to move to California, a move that would likely require the couple to sell the house in Portland and purchase a home in *Page 9 
California. As time when on, it appears as though the lives of Plaintiff and Collette took divergent paths, with Collette ultimately filing for divorce in 2007. Taking the facts as a whole, the court finds that Plaintiff did not abandon his Oregon domicile and acquire a California domicile. Plaintiff was, therefore, an Oregon resident domiciliary through at least 2005.
That determination, however, does not end the court's inquiry. Plaintiff appears to argue that, if he is found to be an Oregon domiciliary, he falls within the exception in paragraph (iii) of subsection (1)(a)(A) of ORS 316.027 (i.e., he spent no more than 30 days in Oregon and any of the years at issue), and that, because he was not domiciled in Oregon, paragraph (B) of ORS 316.027(1)(a) applies rather than paragraph (A).[5] (Ptf's Post-Trial Memo at 4 and 9.)
While Plaintiff's arguments are not well-organized or entirely clear, it appears Plaintiff takes the following position. First, the statute provides that any person who spends less than 31 days in Oregon in any given year is not a resident. ORS 316.027(1)(a)(A)(iii).[6] Plaintiff argues that the residency questionnaire Defendant had him complete during the audit (Def's Ex N) is not sanctioned by Oregon's residency statute, ORS 316.027, and insists that the question that addresses the number of days a person is physically present in Oregon (question 1 e.) cannot be relied on in this case. Although Plaintiff completed and signed the form indicating that he was in Oregon 40 days in each of the years at issue, he now contends that he "estimated on the high side." (Id. at 9.) It may well be that Plaintiff spent less than 31 days in Oregon in 2002, 2003, 2004, and 2005, but Plaintiff has not produced any evidence to show that he was in Oregon less than 31 days in any of those four years, and has not even specifically asserted that to be the case. *Page 10 
As for the validity of the questionnaire, it is merely a tool developed by Defendant to evaluate a taxpayer's residency and needs no specific statutory sanction.
Plaintiff's second argument is more clearly articulated, but misses the mark on the facts before the court. Plaintiff argues that he was "not domiciled in Oregon during the tax years in question, thus ORS 316.027(1)(a)(B) applies * * * as 316.027(1)(a)(A) does not apply as I did not meet the criteria as indicated in 316.027(1)(a)(A)(i)." (Ptf's Post-Trial Memo at 4.) Plaintiff insists that he had no "permanent place of abode" in Oregon (the requirement in ORS 316.027(1)(a)(A)(i)) and that, as a result, he was not domiciled in Oregon and can only be considered an Oregon resident if he "maintains a permanent place of abode in this state and spends in the aggregate more than 200 days of the taxable year in [Oregon]." (Ptf's Post-Trial Memo at 4.) Again, Plaintiff loses on the facts in evidence because Plaintiff did maintain a place of abode in Oregon. He owned a home in Portland where his wife Collette resided and where he stayed when he came back to Oregon from California. There is no evidence as to how often Plaintiff came to Oregon. Moreover, because Plaintiff did maintain a permanent place of abode in Oregon, he is considered an Oregon resident and domiciliary, and paragraph (B) is inapplicable.
B. Credit for Taxes Paid to Another State
The credit issue in this case is whether Plaintiff is entitled to benefit from the general rule applicable to the credit found in ORS 316.082(1), pursuant to which a resident of Oregon is allowed to claim a credit on his Oregon return for the amount of taxes paid to another state, or whether the exception in subsection (5) applies. The court concludes Plaintiff is not allowed the credit on his Oregon return (i.e., he cannot use the credit to offset his Oregon tax liability). *Page 11 
ORS 316.082(1) provides in relevant part:
 "A resident individual shall be allowed a credit against the tax otherwise due under this chapter for the amount of any income tax imposed on the individual * * * for the tax year by another state on income derived from sources therein and that is also subject to tax under this chapter."
Having determined that Plaintiff was a resident of Oregon for the years under appeal (2002 through 2005, inclusive), his income is subject to tax by Oregon. California also has a state income tax. Thus, Plaintiff would be allowed the credit against his Oregon tax liability under subsection (1) of ORS 316.082 unless otherwise precluded by statute or regulation.
ORS 316.082(5) precludes an Oregon resident from claiming the credit on the Oregon return where the nonresident state (in this case California) allows the taxpayer to claim the credit on that state's return (i.e., where that other state allows the taxpayer to claim a credit against the income taxes imposed by that state "for taxes paid or payable to the state of residence"). Subsection (5) of ORS 316.082 provides in relevant part:
 "Credit shall not be allowed under this section for income taxes paid to a state that allows a nonresident a credit against the income taxes imposed by that state for taxes paid or payable to the state of residence."
California allows Oregon residents to claim a credit for mutually taxed income on a California nonresident return. OAR 150-316.082(2)(1)(a) (Example 2).[7] Plaintiff is therefore not allowed a credit against taxes paid (or owing) to Oregon.
However, as Defendant has noted in its Post-Trial Response, California law does allow a taxpayer to request relief in situations such as the present, where another state (Oregon) makes a change or correction that impacts that state's taxes. Cal Rev and Tax Code § 19311.[8] *Page 12 
C. The 100 Percent Penalty
ORS 305.992 provides in relevant part:
 "If any returns required to be filed under ORS chapter 118, 314, 316 * * * are not filed for three consecutive years by the due date (including extensions) of the return required for the third consecutive year, there shall be a penalty for each year of 100 percent of the tax liability determined after credits and prepayments for each such year."
Defendant imposed a penalty equal to 100 percent of the tax because Plaintiff did not timely file his Oregon returns for the years 2002, 2003, and 2004, by the due date of the 2004 return. The returns were all filed on or about September 5, 2006. (Ptf's Post-Trial Memo at 2.) Plaintiff does not dispute the fact that his returns for those three years were not "timely" filed. Plaintiff's concerns about the fairness of the penalty are not within the power of the court to address. That is, the court cannot waive or cancel the penalties because Plaintiff thinks they are not fair. Rather, the penalty is mandatory.
Plaintiff asserts that the penalty is "egregious" and "not fair" because he had been filing returns since 1996 and, more importantly, 80 percent of Plaintiff's income was derived from California. Accordingly, Plaintiff asserts that the 100 percent penalty should only apply to his Oregon source income, which Plaintiff insists is the income earned by his former spouse. However, because the parties filed joint returns, the penalty applies to all of the income on those returns, and Plaintiff `s point is, therefore, not well taken. That is, Plaintiff's rationale is contrary to law. *Page 13 
D. Additional Income and Interest on Underpayment of EstimatedTax
Defendant added income for 2002 and 2005. (Def s Exs L and M.) The income added for 2002 represents additional Oregon income that was not previously included on Plaintiffs Oregon nonresident return. (Id. at M and O.) The income Defendant added for 2005 is largely Plaintiffs California source income for that year. (Id. at L and R.) These matters were challenged by Plaintiff at the early stages of the appeal, but Plaintiff did not present any testimony or other evidence on either issue at trial. Accordingly, Defendant's adjustments adding the additional income for 2002 and 2005 are upheld.
ORS 316.587 provides for the imposition of interest on the underpayment of estimated tax. Generally speaking, the charge is imposed where a taxpayer underpays any tax installment payment by more than 10 percent. ORS 316.587(8). The adjustments to Plaintiffs returns warrant the imposition of that interest for 2003 and 2004. (Def s Exs C and F.)
 III. CONCLUSION
After a careful review of the facts, the court concludes that Plaintiff was a resident of Oregon domiciled in this state in 2002, 2003, 2004, and 2005. Because Plaintiff filed joint returns for those years, the entire income of Plaintiff and his former spouse Collette is subject to tax by Oregon. The court further concludes that Plaintiff is not allowed to claim a credit for taxes paid to another state against his Oregon tax liability for the years at issue. Any such credit, if it is to be taken, must be claimed on Plaintiffs California return. The court also concludes that Defendant properly imposed the 100 percent penalty because Plaintiff did not timely file his 2002, 2003, and 2004 Oregon returns by the due date of the 2004 return. The court further concludes that the additional income Defendant added for 2002 and 2005 is appropriate, that the 100 percent penalties Defendant added to the amount of tax due for 2002, 2003, and 2004 are *Page 14 
appropriate and therefore upheld, and finally, that the interest on underpayment of estimated tax 2003 and 2004 was correctly imposed. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs appeal is denied and Plaintiffs tax liability for the years at issue, 2002, 2003, 2004, and 2005, shall be calculated in accordance with the court's decision as set forth above, with applicable penalties and interest.
Dated this ___ day of May 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Magistrate Dan Robinsonon May 5, 2011. The Court filed and entered this documenton May 5, 2011.
[1] Unless noted otherwise, all references to the Oregon Revised Statutes (ORS) are to 2003.
[2] Oregon also taxes individuals not domiciled in this state if they maintain a permanent place of abode in this state and spend more than 200 days a year in Oregon, unless they can prove that there here for transitory or temporary purposes. ORS 316.027(1)(a)(B).
[3] Unless otherwise noted, all references to the Oregon Administrative Rules (OAR) are to 2002.
[4] On page 9 of Plaintiff's Post-Trial Memorandum, Plaintiff notes that question #7 of Defendant's residency questionnaire "deals with the number of days physically present in the Oregon," and, although Plaintiff wrote in "40" for each of the years at issue and the questionnaire, he states in his memorandum that "I estimated on the high side." (See Def's Ex N-1.)
[5] Paragraph (B) of ORS 316.027(1)(a) provides that a person not domiciled in Oregon who "maintains a permanent place of abode in this state and spends in the aggregate more than 200 days * * * in [Oregon]" in any given year is considered an Oregon resident. Such person is a resident nondomiciliary.
[6] Specifically, the statute provides, in relevant part, that a resident is "[a]n individual who is domiciled in this state unless the individual * * * [s]pends in the aggregate not more than 30 days in the taxable year in this state." ORS 316.027(a)(A)(iii)
[7] That provision has existed in the rule since at least 2000. Furthermore, Defendant's website indicates that California is one of four states (the other three being Arizona, Indiana and Virginia) that requires full-year Oregon residents to claim the credit on the other state's nonresident return. http://www.oregon.gov/DOR/PERTAX/2009_piti/ credits_inc_tax_paid_another_state.shtml.See also Or Pub 17 ½ (2005 ed) at 91.
[8] That code section provides in relevant part: "If a change or correction is made or allowed by the Commissioner of Internal Revenue or other officer of the United States or other competent authority, a claim for credit or refund resulting from the adjustment may be filed by the taxpayer within two years from the date of the final * * * determination." *Page 1