IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| MICHAEL W. CAUSE | ) | |
| and ANGELA G. CAUSE, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 150035D |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION** |

This Final Decision incorporates without change the court's Decision, entered

October 28, 2015. The court did not receive a statement of costs and disbursements within 14

days after its Decision was entered. *See* TCR-MD 16 C(1).

Plaintiffs appeal Defendant's Notice of Deficiency Assessment dated November 18,

2015, for the 2011 tax year. A trial was held on July 14, 2015, in the Oregon Tax Courtroom in

Salem, Oregon. Michael W. Cause (Michael) and Angela G. Cause (Angela)[1] appeared and

testified on their own behalf. Fadi Abouadas appeared on behalf of Defendant but did not testify.

Plaintiffs' Exhibits 1 through 8 and Defendant's Exhibits A through E were received without

objection.No exhibits were received from either party.

## I. STATEMENT OF FACTS

Plaintiffs' purchased a residential property (Washington property) in Vancouver,

Washington, in August, 2011. Michael testified that Plaintiffs wanted to move from Portland

---

[1] Opinions and orders of the Oregon Tax Court typically avoid referring to litigants by their first names. In this instance, however, taxpayers are husband and wife and share a last name. For purposes of this opinion, the court will refer to taxpayers by their first names when referring to either taxpayer as an individual, and as "Plaintiffs" when referring to both individuals collectively.

(Oregon property) to Vancouver and that they "had been looking for places." Angela testified that she and her daughters travelled to Vancouver several times to look at properties. Plaintiffs testified that they inspected the Washington property on August 3, 2011, and signed a Housing and Urban Development (HUD) certification settlement statement on August 4, 2011. (*See also* Ptfs' Exs 7 at 1; 3 at 1.) Michael testified that this HUD certification "obligate[d] [Plaintiffs] to buy the place" and that "[he] had the house [he] wanted. [Plaintiffs] planned on moving." Plaintiffs testified that they were "given the key to the house a week or so before the final transaction actually concluded." (*See also* Def's Ex A at 1.) Although neither could recall the specific date they were given the key, Plaintiffs testified that once the realtor gave them the key they began "dismantling" the Oregon property and moving items to the Washington property.

Defendant submitted a copy of Plaintiffs' bank statement, reporting that on August 16, 2011, Michael's pension funds, in the amount of $198,000 were deposited into Plaintiffs' bank account. (Def's Ex B at 1.) Defendant submitted a copy of the HUD final settlement statement for the Washington residence dated August 19, 2011, and Plaintiffs' bank statement reported that the pension funds were withdrawn from Plaintiffs' bank account that same day. (Def's Ex B at 1-2.) The HUD final settlement statement shows that the Washington property's previous owners were responsible for the property taxes from July 1, 2011 through August 12, 2011. (Ptfs' Ex 3 at 2; Def's Ex B at 2.)

Michael testified that the Washington property "had been deserted for approximately seven years" and "there were a few issues [he] had to resolve before [he] could move all of [his] stuff in." Michael testified he "started maintaining the house" to get the house up to his standards. Michael testified that the Washington property was fumigated once or twice for mice, and other issues existed including "toilets [that were] not running as well as you would like."

Michael testified that "the kitchen needed repairs, the roof needed maintenance, but the house was livable." (*See also* Ptfs' Ex 2 at 1.) Plaintiffs agreed that Michael "spent most of [his] time and energy in [their] new home making repairs and enhancing [their] new home's condition." (*See also* Def's Ex A at 1.) Michael testified that the materials used to improve the Washington property were purchased from Oregon stores. Michael testified that he was closer to stores such as "Lowes [and] Home Depot" located in Oregon than similar stores in Washington.

In a letter dated January 24, 2013, Michael wrote that he moved to Washington in August of 2011, while Angela remained in Oregon. (Def's Ex A at 1.) Michael testified that he retired "about four or five years earlier," allowing him to take "[his] time and move as many things as [he] could * * * from [his] Portland place, which was about seven miles away" to the Washington property without rushing. Plaintiffs agreed that Michael "return[ed] frequently, to move [their] home materials, tools, and stuff." (*See also* Def's Ex A at 1.)

Angela testified that she considered the Washington residence her home although she was "floating" between Oregon and Washington "as necessary for the purpose of moving our items, packing up the house, cleaning the house, as well as assisting as best [she] could * * * in the Vancouver house." Michael testified that once he began fixing up the interior of the property, Angela "was over almost every night [he] was there, and [he] was there just about all the time." Angela testified that while she went back and forth between the two cities "Vancouver was our home and that is where I slept." Michael testified that Plaintiffs parked their motor home on the property and slept there. Plaintiffs stated that the motor home is 34 feet long and "self-contained" which enabled Plaintiffs to use the motor home's amenities. (*See also* Ptfs' Ex 2 at 1.) Plaintiffs testified that they were unable to recall the specific dates the motor home was parked at the Washington property.

Michael testified that during this "transitory" time, Angela "was basically living in two places. [Angela] was staying with [him] as husband and wife, but she was the one [that] made sure the other house was okay." Michael testified that Plaintiffs' daughter was still living at the Oregon property and Angela returned to keep "control of [the] family and [the] property." Michael testified that Angela was still working in Portland, "she came to Vancouver and slept, but she would always go over to Portland to * * * make sure the house was okay and my daughter was okay." Michael testified that "after a number of months of [him] working [at the Washington property] from the middle of August * * * we finally got everything ready * * * in Portland to move over." Michael testified that by November "[Plaintiffs] had everything in position to move" and at that time "[Plaintiffs] moved their heavy stuff to Vancouver." Michael testified that at the end of November, Angela had no reason to return to the Oregon property except to prepare the house for rent or sale. Michael testified that Angela's "final move was in November, but realistically [Angela] moved when [he] moved." Plaintiffs submitted affidavits from three neighbors stating that Plaintiffs resided at the Washington residence continuously "starting mid-August 2011." (Ptfs' Ex 4 at 1-3.) The affiants did not testify.

At the time the Vancouver residence was purchased, Plaintiffs used a Portland post office box to receive and collect their mail. (Ptfs' Ex 2 at 1.) Michael testified that the post office box was set up by his daughter when she began attending college in Oregon and that they continued to maintain the post office box "due to issues with mail" in the area. Michael testified that the Portland post office box was within half a mile from the Oregon property and that "rather than have to deal with some of those issues, we always had a post office box." Michael testified that most of Plaintiffs' official mail goes to the Portland post office box and he saw no reason to

/ / /

change it. Plaintiffs stated that they continue to use the Portland post office box as a "safe and consistent way of assuring that all family communications would be received." (*See also id.*)

Defendant submitted evidence of Angela's Oregon W2 forms for the 2011 and 2012 tax years addressed to a post office box in Portland. (Def's Ex D at 1-4.) Defendant submitted evidence of Plaintiffs' Oregon voter registration in the form of an information request dated March 27, 2014. (Def's Ex E at 1-2.) The information request stated that as of March 27, 2014, Plaintiffs were registered to vote in Oregon. (*Id.*) Michael testified that the pension funds used to purchase the Washington property were placed in a Bank of America account. When asked whether the bank Plaintiffs used in August of 2011 was located in Washington, Michael testified that the "bank had a branch in Washington." Michael testified that the title company Plaintiffs used was located in Vancouver, Washington. Plaintiffs did not surrender their Oregon driver's licenses until March of 2012. (Ptfs' Ex 1 at 3.) Plaintiffs submitted evidence of a Washington vehicle title certificate application dated June 14, 2013. (Ptfs' Ex 5 at 1.) Michael testified that he "did not join any organizations" in Washington because he "was not a member of any organizations" in Oregon.

Plaintiffs filed a joint part-year Oregon resident tax return for the period of January 1, 2011 to October 31, 2011. (Ptfs' Ex 1 at 2.) On August 13, 2013, Defendant received an amended return from Plaintiffs stating that the $274,023 pension fund Plaintiffs had received on August 16, 2011, was received after Plaintiffs had effected a change of domicile from Oregon to Washington and was not subject to Oregon's income tax. (Ptfs' Ex 1 at 2.) Defendant issued a notice of deficiency dated October 1, 2014, concluding that the pension funds were subject to Oregon taxation and as a result, Plaintiffs had reported a substantial understatement of taxable income for the 2011 tax year. (Ptfs' Ex 1 at 1.)

## II. ANALYSIS

In Oregon, an income tax is imposed on every resident of this state as well as nonresidents with an Oregon source of income. *See* ORS 316.037(1), (3)[2]. Oregon "may tax an individual for income earned outside Oregon, if that individual was a 'resident of this state' at the time that the individual earned the income." *Dept. of Rev. v. Glass,* 333 Or 1, 4, 35 P3d 325 (2001) Oregon defines "resident" as "[a]n individual who is domiciled in this state * * *." ORS 316.027(1)(a)(A). Residency is statutorily equivalent to domicile. Domicile is a common-law concept composed of two components: (1) "a fixed habitation or abode in a particular place" and (2) "an intention to remain there permanently or indefinitely." *dela Rosa v. Dept. of Rev.* (*dela Rosa*), 313 Or 284, 289, 832 P2d 1228 (1992) (internal quotation marks omitted). Oregon Administrative Rule (OAR) 150-316.027(1)(a) defines "domicile" as "the place an individual considers to be the individual's true, fixed, permanent home" and as "the place a person intends to return to after an absence." While an individual can have more than one residence, he can have but one "domicile." *dela Rosa*, 313 Or at 289 (internal quotation marks omitted).

Plaintiffs argue that they had effected a change of domicile from Oregon to Washington no later than August 16, 2011. A change in domicile requires three elements: "(1) the person must establish a residence in another place; (2) form an intent to abandon the old domicile; and (3) intend to acquire a new domicile." *White v. Dept. of Rev.* (*White*)*,* 14 OTR 319, 321 (1998) (internal quotation marks omitted). OAR 150-316.027(1)(a) states that a person's domicile continues until that person demonstrates an intent to abandon it, acquires a new domicile, and actually resides in the new domicile. Given the inherent difficulties in ascertaining intent, "triers of the fact of domicile rely heavily upon the overt acts of the individual as true indicators of his

---

[2] All references to the Oregon Revised Statutes (ORS) are to the 2009.

state of mind. Nevertheless, the whole aim of the inquiry is to discern the true intent."

*Hudsperth v. Dept. of Revenue* (*Hudsperth*), 4 OTR 296, 298-99 (1971). "[D]etermination of an individual's domicile is based on intent supported by facts and circumstances rather than merely the statements of the individual." *Butler v. Dept. of Rev.* (*Butler*), TC-MD 050801D, WL 2041284 at *4 (July 18, 2006). Factors contributing to a determination of domicile "include family, business activities[,] and social connections." OAR 150-316.027(1)(a). Plaintiffs have the burden of proving by a preponderance of the evidence that they had effected a change in domicile from Oregon to Washington as of August 16, 2011. ORS 305.427.

A.      *Residence in Washington.*

The first part of the three part test to determine Plaintiffs' alleged change in domicile requires that Plaintiffs show that they established a residence in Washington, and were residing there, no later than August 16, 2011. *White*, 14 OTR at 321. "[A] residence for purposes of [the three part test] is simply an abode. * * * [A]n abode is any physical building, structure, or vehicle in which the taxpayer lives and sleeps." *Bleasdell v. Dept. of Rev.* (*Bleasdell*), 18 OTR-MD 354, 361 (2004); *see also Ramsey v. Dept. of Rev. (Ramsey)*, 7 OTR 478, 481 (1978) (defining residence as "a building or shelter which is the dwelling place of a person."). This court has said that renting an apartment in another state can constitute the establishment of a residence. *See, e.g*. *Butler*, TC-MD WL 2041284 at *4.

Plaintiffs argue that signing the HUD certification on August 4, 2011 and receiving the keys to the Washington property sometime after, supports their ownership of, and residence in, the Washington property. Plaintiffs were responsible for the subject property's property taxes as of August 13, 2011. (Def's Ex B at 2.) Plaintiffs transferred funds to purchase the subject property on August 19, 2011, making them the subject property's owner. (Def's Ex B at 1.) For

purposes of domicile, the court makes a distinction between owning a property and establishing a residence at the property. Ownership of a property does not demonstrate that Plaintiffs resided there, and that the Washington property was in fact "the dwelling place of a person." *See Ramsey,* 7 OTR at 481. A taxpayer may own property in many states without ever establishing a residence there. Signing the HUD certification and receiving the keys to the Washington property shows ownership and provides access to the property, but it does not demonstrate the establishment of a residence for purposes of effecting a change in domicile.

The evidence Plaintiffs provided fails to contain the level of specificity that is required to show that they had established a residence by August 16, 2011. The affidavits Plaintiffs submitted, for which the affiants did not testify, state that Plaintiffs resided at the Washington residence from "mid-August 2011 until the present." (Ptf's Ex 4 at 1-3.) Statements such as "mid-August" are not specific enough to prove that Plaintiffs were residing at the Washington property as of August 16, 2011. "Mid-August" suggests a range of possible dates, rather than a specific date. Whether or not the date of August 16, 2011 is within that range is not supported by the evidence before the court.

For the court to determine that Plaintiffs were residing in Washington by August 16, 2011, the court must receive evidence that Plaintiffs were residing at the Washington property by that specific date, rather than statements that create a general timeframe. Evidence of residence on a particular date can be proven by a number of documents: a utility bill, creating an account with a cable company, a subscription to a daily paper, or receiving mail at the property's address. Plaintiffs did not submit any or similar documents to those listed above.

Plaintiffs testified that they parked their motor home at the Washington property, when they stayed in Washington. Like renting an apartment, parking the motor home at the

Washington property could provide supporting evidence of their residence in Washington, but Plaintiffs were unable to recall when the motor home was brought to the Washington property or how long it remained parked there. Absent more specific dates, Plaintiffs moving the motor home to Washington fails to substantiate whether they had established a residence in Washington as of August 16, 2011.

Based on Plaintiffs' evidence, the court cannot conclude that Plaintiff's Washington property was their residence no later than August 16, 2011. Plaintiffs failed to meet the first element of the three part test.

Having failed to meet the first element of the three part test, the court need not consider the other two parts of the test. However, given the evidence, the court will briefly discuss the third element, Plaintiffs' intent to acquire a Washington domicile.

B.    *Intent to Acquire a Washington Domicile*

The third and final part of the test to demonstrate a change in domicile requires Plaintiffs to prove that by August 16, 2011, they had the intent to acquire Washington as their new domicile. "Typically[,] the purchase of a home coupled with a job in a given locale is sufficient to establish domicile in that state." *Backman v. Dept. of Rev.*, 16 OTR-MD 156, 162 (1999). However, this court has held that a taxpayer retained their Oregon domicile even though employed and resident of another state where there was evidence that taxpayer lacked intent. *See White*, 14 OTR at 323 (finding no intent to establish a new domicile where taxpayer kept a car in Oregon and made regular trips to Oregon to visit his wife.). Plaintiffs argue they proved the necessary intent to acquire Washington as their new domicile no later than August 16, 2011.

The evidence before the court shows that the only connection Plaintiffs had to Washington was their purchase of the Washington property. Plaintiffs did not provide evidence

of any family, business, or social ties to Washington. *See* OAR 150-316.027(1)(a) (Factors contributing to a determination of domicile). Angela's testimony of "floating" between their two properties located in Oregon and Washington, and returning to Oregon to "maintain control" of the Oregon property through October, 2011, does not support Angela's intent to acquire a Washington domicile as of August 16, 2011. Plaintiffs did not submit evidence of actions that would demonstrate their conscious intent to acquire Washington as their new domicile no later than August 16, 2011. Plaintiffs' evidence shows that many of the connections Plaintiffs established with Washington state did not occur until after August 16, 2011. For example, Plaintiffs surrendered their Oregon driver licenses in March of 2012, and applied for a Washington vehicle registration in June of 2014. Plaintiffs were registered to vote in Oregon as late as March, 2014. Those decisions do not substantiate Plaintiffs' intent to acquire Washington as their domicile no later than August 16, 2011.

Plaintiffs maintained minor connections to Oregon. Michael testified that he returned to Oregon to purchase the materials to repair the Washington property. Plaintiffs testified that the post office box they retained was conveniently located near the Oregon property and Plaintiffs submitted no evidence that they purchased an equally convenient Washington post office box. Those connections may not be determinative, but they are connections which could have easily been acquired in Washington.

Based on the evidence before the court, Plaintiffs did not establish ties to Washington sufficient to prove an intent to acquire a new domicile. Apart from the purchase of the Washington property, Plaintiffs failed to substantiate their intent to acquire Washington as their domicile no later than August 16, 2011.

/ / /

C.    *Summary*

Plaintiffs argue that they had successfully abandoned their Oregon domicile and acquired a Washington domicile on or before August 16, 2011.  Plaintiffs offered compelling testimony regarding their intent to relocate to Washington in 2011 and the court recognizes that Plaintiffs have now established a residence in Washington.  Unfortunately, "a mere intent cannot create a domicile." *Elwert v. Elwert*, 196 Or 256, 265, 248 P2d 847 (1952).  The court bases a determination of intent through supporting facts and circumstances.  *Butler*, WL 2041284 at *4. Plaintiffs are in the unique position of asking the court to determine that they successfully effected a change of domicile by a particular date.  Given the specificity with which Plaintiffs seek to establish the date their domicile changed, that determination can only be made with equally specific evidence.  Plaintiffs substantiated their effected change in domicile as of August 16, 2011, with only general testimony regarding the relocation process.  Plaintiffs' evidence does not substantiate that Plaintiffs were domiciled in Washington as of August 16, 2011.  Even though the purchase of property in Washington is a substantial connection to that state, the majority of Plaintiffs' ties remained firmly rooted in Oregon on August 16, 2011.

IV.  CONCLUSION

After careful review of the testimony and evidence, the court concludes that Plaintiffs failed to prove by a preponderance of the evidence that they effected a change of domicile by August 16, 2011.  Now, therefore,

/ / /

/ / /

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ____ day of November 2015.


_____
JILL A. TANNER
PRESIDING MAGISTRATE


*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on November 19, 2015.*