IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

DAVID J. TITUS,                      )
                                      )
         Plaintiff,            )    TC-MD 110772N
                                        )
     v.                          )
                                        )
DEPARTMENT OF REVENUE,        )
                                        )
        Defendant.        )   **DECISION**

      Plaintiff appealed Defendant's Notices of Deficiency Assessment dated May 6, 2011, for

tax years 2002, 2003, 2004, 2005, 2006, and 2007, stating that he was "not an Oregon resident"

for the years at issue. (Ptf's Compl at 1.) A trial was held on the matter on June 21, 2012, in the

Tax Courtroom in Salem, Oregon. Plaintiff appeared and testified on his own behalf. Eleanor

Titus (Eleanor), Plaintiff's mother, and John Titus (John), Plaintiff's father, testified on behalf of

Plaintiff.[1] Nathan Carter, Assistant Attorney General, appeared on behalf of Defendant. Ron

Graham (Graham), Tax Auditor, testified on behalf of Defendant. Plaintiff's Exhibits 1 through

19 were received without objection. Defendant's Exhibits A through U were offered. Plaintiff

objected to Defendant's Exhibit Q. The parties filed written closing arguments and this matter is

now ready for decision.

## I. STATEMENT OF FACTS

      Plaintiff maintains that, for the 2002 through 2007 tax years, he was not an Oregon

resident and therefore does not owe Oregon income tax. Plaintiff testified that, since 1983, he

has lived in Aspen, Colorado and the Lake Tahoe area of California and Nevada. Plaintiff

---

[1] When referring to a party in a written decision, it is customary for the court to use the last name. However, in this case, the court's Decision recites facts and references to several individuals with the same last name, Titus. To avoid confusion, the court will use the first name of the individual being referenced.

testified that he believes that he is domiciled in Nevada because his closest ties are to that state. (*See also* Def's Ex N at 2.) Plaintiff's accountant also took that position in a 2009 letter to Defendant. (Def's Ex K at 3.) During the conference with Defendant, Plaintiff's attorney and representative took the position that Plaintiff was domiciled in Colorado. (Def's Ex N at 2.) Defendant maintains that Plaintiff is domiciled in Oregon because Plaintiff has never manifested intent to establish a new domicile elsewhere. (Ptf's Compl at 4.) Because Plaintiff lives an itinerant lifestyle, he has connections to Oregon, California, Nevada, and Colorado. (*Id.* at 3.) The court will discuss Plaintiff's connections to Oregon, Nevada, and Colorado in turn.

A. *Oregon*

Plaintiff testified that he was born in Salem, Oregon, attended high school in Oregon, and graduated from the University of Oregon with a bachelor's degree in December 1981. Plaintiff last worked in Oregon in 1983, after which time he moved to California and Nevada. (Ptf's Closing Arg at 1, June 21, 2012.) Plaintiff testified that, because he grew up in Oregon, he lists Oregon as his hometown in his online biography and on his work nametag. He testified that his nametag serves as a conversation starter with customers at Aspen Ski School.

During the tax years at issue, Plaintiff's parents owned a home and lived in Oregon. (Def's Ex K at 2.) Plaintiff visited his parents once or twice a year. (Ptf's Ex 18 at 4.) When Plaintiff visited, he stayed in an office that doubled as a guest room in his parents' home. (*Id.*) Plaintiff assisted his parents by performing basic yard work, but did not make any payments for home improvements or house maintenance. (*Id.*) John testified that Plaintiff gave him $11,000 on September 21, 2006, which he used to pay property taxes on the Oregon home. Plaintiff testified that he gave his father the money because, otherwise, his parents would lose their home.

/ / /

Plaintiff testified that, other than his parents, his only family member in Oregon is a cousin who lives in Keizer, with whom he is not in contact. Plaintiff testified that he keeps in contact with an old high school friend who lives in Oregon. He also visits a dentist in Oregon once or twice a year. (Ptf's Ex 18 at 3.)

Plaintiff testified that he did not own any assets in Oregon and did not earn any income in Oregon during the tax years at issue. However, Plaintiff is the trustee of an Oregon revocable trust. (Ptf's Ex 13 at 9.) Plaintiff also owns two vehicles that were registered in Oregon as recently as January 1, 2009. (Def's Ex G at 2-3.) He testified that he registered those vehicles in Oregon as a matter of convenience. Plaintiff testified that his father gave him a Suburban in 2005 and he had to register it in Oregon in order to drive it to Nevada. Plaintiff testified that he subsequently registered the Suburban in Nevada as early as 2010. (Ptf's Ex 13 at 8.) Plaintiff testified that he bought a vehicle in California in 2002, took it to a specialized mechanic in McMinnville, Oregon, and then registered that vehicle in Oregon.

Plaintiff was registered to vote in Oregon since 1998 and voted in Oregon in 2008. (Ptf's Ex 18 at 3; Def's Ex F.) Plaintiff testified that he wanted to vote in presidential elections and registering in Oregon was the only way he could do so given the ski season. (*See* Ptf's Closing Arg at 1, June 21, 2012.) Plaintiff also retained an Oregon driver license during the tax years at issue.[2] (Def's Ex G at 1.) Plaintiff testified that he maintained his Oregon driver license because it has a motorcycle endorsement that his Nevada driver license lacked. Plaintiff also obtained resident shellfish licenses in Oregon in 2004, 2005, and 2006. (Def's Ex E at 3.) Plaintiff

/ / /

---

[2] Plaintiff obtained a California driver license in 1986 and a Nevada driver license in 1996. (Ptf's Ex 18 at 3; Ptf's Ex 13 at 1.) It is unclear to the court why Plaintiff did not surrender his Oregon driver license when he obtained new licenses.

testified that he obtained those licenses in order to help his father and his father's friends go crabbing. (*See* Ptf's Closing Arg at 1, June 21, 2012.)

Plaintiff received mail at his parents' post office (PO) box in Independence, Oregon. (Ptf's Ex 18 at 3.) Plaintiff testified that he does not have a key to the PO box. Plaintiff received mail, including notices regarding voter registration, vehicle registration, and a money market account Plaintiff's parents set up for him at birth. (*Id.*) Plaintiff testified that he sent tax documents to the Oregon PO box for his mother to pick up.

Eleanor testified that, since 1960, she has worked in the field of accounting and tax preparation. She testified that her last employer was a tax preparer in Monmouth, Oregon. Eleanor testified that her employer in Monmouth prepared Plaintiff's tax returns until 2007 or 2008. Eleanor testified that she included the Independence, Oregon, PO box as Plaintiff's address on Plaintiff's tax returns for the tax years at issue.

Graham testified that he believes Plaintiff will return to Oregon once Plaintiff's parents pass away. Plaintiff testified that he has no intent to ever return to Oregon because there are no career opportunities for him in the state and he will not inherit his parents' house because it is subject to a reverse mortgage.

B.       *Nevada*

Plaintiff testified that from 1983 to 1992, he lived and worked in Lake Tahoe. In 1983, Plaintiff began working as a ski instructor and also worked "year round at Caesars Tahoe in order to obtain health insurance." (Ptf's Closing Arg at 2; Ptf's Ex 1 at 1-4 (wages from Caesars Tahoe Hotel Casino from 1983 through 1993).) In 1993, Plaintiff started working at "Edgewood Tahoe" (Edgewood).[3] (Ptf's Closing Arg at 2, July 23, 2012; Ptf's Ex 1 at 4-7 (wages from

---

[3] "Edgewood" is reported as "Park Cattle Co" on Plaintiff's W-2s. (*See generally* Ptf's Ex 16.)

Edgewood from 1993-2000); Ptf's Ex 16.)  Plaintiff testified that, beginning in 1993, he spent the "summer season" in Lake Tahoe and the "winter season" in Aspen.  He testified that his employment at Edgewood typically began during the second week of June and ended in October. Plaintiff testified that he plans to continue working at Edgewood until he retires.

Plaintiff did not own a residence in Nevada during the tax years at issue.  (Ptf's Ex 18 at 1.)  Plaintiff testified that, because he spends only part of the year in Nevada, he finds it more convenient to rent rooms from friends while in the state.  During the tax years at issue, Plaintiff rented a room in a home owned by a friend of his in South Lake Tahoe, California.[4]  (Ptf's Ex 18 at 1-2; Def's Ex K at 2.)  Plaintiff testified that he was and is a joint owner of a vacant lot in Nevada with two other people.  Plaintiff testified that his intent when he bought the lot was to buy out the other two owners and build a home on the lot.

Plaintiff testified that, because he has worked and lived in Nevada since 1983, many of his friends and coworkers live in Nevada.  Plaintiff maintained PO boxes in Stateline, Nevada and Zephyr Cove, Nevada during the tax years at issue.  (Ptf's Ex 18 at 2.)  Plaintiff received a Nevada driver license in 1996, which he renewed in 2004.  (Ptf's Ex 13 at 1.)  Plaintiff registered to vote in Nevada in 2009.  (*Id.* at 11.)  Plaintiff owns a Suburban that is currently registered and insured in Nevada.  (*Id.* at 8, 11.)  Plaintiff also has an REI membership listing his Zephyr Cove PO box as his address.  (*Id.* at 12.)

C.      *Colorado*

In 1993, Plaintiff began working as a ski instructor at Aspen Ski School.  (Ptf's Closing Arg at 2, July 23, 2012; Ptf's Ex 1 at 4-6 (wages from Aspen Skiing Company LLC from 1993-2000.)  Plaintiff testified that, since 1993, he has lived and worked in Aspen, Colorado

---

[4] Plaintiff testified that Tahoe is on the border of California and Nevada.

from November through April each year. (*See* Ptf's Ex 18 at 1-2; Def's Ex K at 1.) Plaintiff stated that his position with the Aspen Ski School provided him "with a 401k plan and * * * year round health insurance." (Ptf's Closing Arg at 2, July 23, 2012.) He testified that he plans to work at Aspen Ski School until he retires. Plaintiff did not own a residence in Colorado during the tax years at issue; rather, he rented a room from a friend. (Ptf's Ex 18 at 1; Def's Ex K at 1.) Plaintiff testified that many of his friends and coworkers live in Colorado.

Plaintiff's only bank account was with Alpine Bank, located in Colorado; he also had a credit card. (Ptf's Ex 18 at 1.) Plaintiff had a PO box in Snowmass Village, Colorado. (*Id.* at 2; Def's Ex H a 2.) Plaintiff had a AAA membership in Colorado. (Ptf's Ex 13 at 11.) Plaintiff was a member of the Rocky Mountain Division of the Professional Ski Instructors of America. (*Id.* at 12.) Plaintiff also had an Aspen, Colorado library card. (*Id.* at 12.) Plaintiff received inoculations in Colorado. (Ptf's Ex 13 at 13.) He stated that he received "[a]ll major medical services * * * in Colorado and California." (Ptf's Closing Arg at 1, June 21, 2012.)

Plaintiff filed original income tax returns in Colorado for the 2002 through 2007 tax years. (*See* Def's Ex B, C, D.) Amended Colorado income tax returns were prepared but, according to the State of Colorado Tax Auditing and Compliance Division, no amended returns had been filed for tax years 2003 through 2011 as of April 24, 2012. (Def's Ex I at 1.) Graham testified that it appears Plaintiff received the amended returns in July 2009. (*See, e.g.,* Def's Ex B at 3.) Plaintiff testified that he did not receive any of the Colorado amended returns until about one month before the trial date because they were sent to his former attorney and not to him. (*See* Ptf's Ex 19 (box addressed to Plaintiff at his Colorado addressed with a postmark of January 17, 2012).) Plaintiff's original and amended returns differ with respect to the address: Plaintiff changed his address from his parents' PO box in Independence, Oregon, to his PO box

in Snowmass Village, Colorado. (Def's Ex B, C, D.) Some of the amended Colorado returns include an "explanation of changes" stating that "it has been determined that [Plaintiff's] residence and domicile is in Colorado based on the facts and circumstances of his situation." (*See, e.g.,* Def's Ex B at 39; Ex C at 12, 41; Ex D at 24, 65.) Plaintiff also shifted some of his income from Nevada to Colorado. (*Id.*) Plaintiff's tax preparer checked the box for "part-year resident(s) or nonresident(s)" on Plaintiff's 2003, 2005, 2006, and 2007 original Colorado income tax returns, and the box for "full-year resident(s)" on Plaintiff's 2004 original Colorado income tax return. (Def's Exs B, C, D, J.)) No explanation was provided for that discrepancy.

D.        *International travel: 2002 to 2005*

Plaintiff testified that he often traveled internationally in between his employment in Colorado and Nevada during the years 2002 through 2005. Plaintiff provided photocopies of his passport stamps during the tax years at issue. (Ptf's Ex 14.) In September 2002, Plaintiff traveled to Chile. (Ptf's Ex 14 at 2-3.) Plaintiff stated that he traveled to Fiji "after the 2002/2003 ski season (April 19th 2003) and returned June 2, 2003." (Ptf's Closing Arg at 5, July 23, 2012.) Plaintiff stated that he "believes he traveled to the east coast with a friend" after the ski season ending April 17, 2004. (*Id.*) In September 2004, Plaintiff traveled to Grenada. (Ptf's Ex 14 at 4.) From April to May 2005, Plaintiff was in Mexico. (*Id.* at 5.)

## II. ANALYSIS

Oregon imposes a state income tax on every resident of Oregon and every nonresident with Oregon source income. ORS 316.037(1), (3).[5] "Resident" is defined by statute as:

/ / /

---

[5] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2005. Although several versions are applicable to the tax years at issue, the 2001, 2003, and 2005 versions of ORS 316.027, ORS 316.037, and OAR 150-316.027 are identical.

"(A) An individual who is domiciled in this state unless the individual:

"(i) Maintains no permanent place of abode in this state;

"(ii) Does maintain a permanent place of abode elsewhere; and

"(iii) Spends in the aggregate not more than 30 days in the taxable year in this state[.]"

ORS 316.027(1)(a)(A). "[A]n individual is a resident of Oregon if that individual is domiciled in Oregon, unless the [individual] falls within the safe haven provided by ORS 316.027(1)(a)(A)(i) to (iii)." *Gorski v. Dept. of Rev.* (*Gorski*), TC No 4971 at 10 (May 23, 2012).

Plaintiff has the burden of proof and must establish his case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

A.    *Domicile*

Domicile is a common law concept comprised of two components: "a fixed habitation or abode in a particular place, and an intention to remain there permanently or indefinitely." *dela Rosa v. Dept. of Rev.,* 313 Or 284, 289, 832 P2d 1228 (1992). "Domicile" is defined as "the place an individual considers to be the individual's true, fixed, permanent home. Domicile is the place a person intends to return to after an absence." OAR 150-316.027(1)(a). Everyone has a domicile and an individual can have only one domicile at any time. *Zimmerman v. Zimmerman*, 175 Or 585, 591, 155 P2d 293 (1945). "The law is also clear that once domicile is established or determined to be in a particular location, it remains there until the person establishes a new domicile." *Duncan v. Dept. of Rev.,* 1998 WL 792454 at *1, TC No 4315 (Nov 3, 1998).

Plaintiff was born in Oregon and lived in Oregon until he graduated college in 1981; thus, it is clear that Plaintiff's original domicile was Oregon.

"In order to change domicile, an individual must (a) intend to abandon that person's former domicile and acquire a new one, and (b) actually acquire a new domicile." *Gorski*, TC No 4971 at 10, *citing Davis v. Dept. of Rev.*, 13 OTR 260, 264 (1995). "[D]etermination of an individual's domicile is based on intent supported by facts and circumstances rather than merely the statements of the individual * * *." *Butler v. Dept. of Rev. (Butler),* TC-MD No 050801D, WL 2041284 at *4 (July 18, 2006) (citations omitted). "Factors that contribute to determining domicile include family, business activities and social connections." OAR 150-316.027(1)(a). Absent an intent to abandon his Oregon domicile and acquire a new domicile, Plaintiff's domicile is Oregon. For example, in *Dept. of Rev. v. Glass* (*Glass*), 15 OTR 117, 120 (2000), *aff'd* 333 Or 1, 35 P3d 325 (2001), the court held that the taxpayer was domiciled in Oregon despite the fact that his work during the tax years at issue was entirely outside of the state:

> "Taxpayer grew up in Oregon and never changed his domicile before or after his military service. Taxpayer testified that he is not a resident of any state and does not think of any state as 'home.' However, taxpayer's contacts with Oregon, including his driver license, registering cars in Oregon, using an Oregon mailing address, and the fact that his parents and siblings live in Oregon, all constitute evidence of his state of mind. * * * While those contacts are not very substantial, they are significant because of the lack of contacts with any other state."

1.     *Residence outside of Oregon*

To prove that he has abandoned his Oregon domicile and adopted a new domicile in another state, Plaintiff must prove that he established an abode in another state. *Bleasdell v. Dept. of Rev.*, 18 OTR-MD 354, 361 (2004). An abode is "any physical building, structure, or vehicle in which the taxpayer lives and sleeps." OAR 150-316.027(1)(c). It is uncontested that, after leaving Oregon in 1983, Plaintiff has rented rooms in houses and apartments in California,

Nevada, and Colorado. Thus, Plaintiff has established residences in several other states. *See Palandech v. Dept. of Rev.*, TC-MD 100015C, WL 1045641 at *7 (Mar 23, 2011) (concluding taxpayers established residences in Washington, New Mexico, and Arizona by renting or purchasing homes in those states).

2.      *Intent to abandon Oregon domicile*

Plaintiff must prove that he intended to abandon his Oregon domicile. Determining an individual's intent "is difficult because it is so heavily steeped in the subjective view of the individual at issue." *Ott v. Dept. of Rev.*, 16 OTR 102, 111 (2002) (citing *Hudspeth v. Dept. of Rev.*, 4 OTR 296, 298 (1971)). "Due to the self-serving nature of statements of intent, heavy reliance is placed on an individual's overt acts to discern state of mind." *Id.*

Plaintiff testified and reiterated in his closing arguments that he left Oregon to pursue a career as a ski instructor. (*See* Ptf's Closing Arg at 1-2, Jul 23, 2012.) Plaintiff further stated:

> "Independence Oregon has absolutely no career possibilities for [his] profession. Service industry jobs are scarce and the pay is significantly less than that of Tahoe or Aspen. Skiing is at least 150 miles away and the only destination resort is Mt Bachelor which does not have the same client base that [Plaintiff] has worked so hard to achieve and maintain."

(*Id.* at 2.) Plaintiff has been successful in his chosen career as a ski instructor and the court is persuaded by Plaintiff's testimony and statement that he could not pursue that career in Oregon. OAR 150-316.027(1)(a) states that "business activities" are one factor "that contribute to determining domicile" and Plaintiff's career as a ski instructor in a factor suggesting that Plaintiff intended to abandon his Oregon domicile.

Despite pursuing his career in Nevada and Colorado, Plaintiff maintained numerous ties with Oregon during the tax years at issue, suggesting that Plaintiff did not intend to abandon his Oregon domicile. Plaintiff's parents lived in Oregon and he visited them twice a year. Although

Plaintiff received most of his medical care in Colorado, Plaintiff retained the services of a dentist and a mechanic in Oregon. Plaintiff received mail at his parents' PO box in Oregon in addition to his PO boxes in Nevada and Colorado. Plaintiff also sent his tax information to his parents' PO box. Plaintiff had cars registered in both Oregon and Nevada. Plaintiff had both Oregon and Nevada driver licenses. Plaintiff was registered to vote in Oregon and acquired an Oregon resident shellfish license for three of the tax years at issue. Plaintiff's taxes were prepared in Oregon. Thus, Plaintiff retained numerous connections to Oregon during the tax years at issue.

This court has previously held that maintaining numerous connections to Oregon manifests an intent to remain domiciled in the state. In *Dane v. Department of Revenue* (*Dane*), the taxpayer maintained ties to Oregon including in-state medical services, frequent visits, and mail receipt at an Oregon PO box. TC-MD 040084F, WL 2640502 at *4 (Oct 28, 2004). Even though the taxpayer in *Dane* received mail and medical services in Nevada, did not have an Oregon driver license, was not registered to vote in Oregon, and had a car registered in Nevada, the court determined the taxpayer "made a conscious decision to maintain his connections to Oregon and, therefore, intentionally did not abandon his Oregon domicile." *Id.* Plaintiff discounts the relevance of family connection to Oregon, stating that he "should not be taxed for visiting his elderly parents." (Ptf's Closing Arg at 6, July 23, 2012.) However, as is clear from previous case law and OAR 150-316.027(1)(a), family connections are an important consideration in determining domicile and Plaintiff's only family is in Oregon. Furthermore, as discussed above, Plaintiff has maintained numerous connections to the state of Oregon. As a result, the court finds that Plaintiff did not intend to abandon his Oregon domicile.

/ / /

/ / /

3. *Intent to acquire a new domicile*

Plaintiff must also prove he intended to acquire a new domicile outside of Oregon. "Typically the purchase of a home coupled with a job in a given locale is sufficient to establish domicile in that state." *Backman v. Dept. of Rev.*, 16 OTR-MD 156, 162 (1999). The intention to acquire a new domicile "must be a present intent" and "cannot be conditioned on the occurrence or nonoccurrence of some future event or contingency." *Gorski*, TC No 4971 at 10-11, *citing Oberhettinger v. Dept. of Rev.*, 4 OTR 62, 64 (1970).

As discussed above, the primary factor suggesting that Plaintiff intended to acquire a domicile outside of Oregon is the fact that he pursued a career as a ski instructor, returning to jobs in Colorado and Nevada year after year, including the tax years at issue. As of the tax years at issue, Plaintiff had established other connections to Colorado and Nevada. Plaintiff jointly owned a vacant lot in Nevada and testified that he intends to buy out the other owners and reside on that property. Plaintiff rented rooms in both states in conjunction with his seasonal employment. He maintained PO boxes in both Nevada and Colorado, as well as a bank account in Colorado. Plaintiff received medical care primarily in Colorado.

Plaintiff's actions do not clearly show a conscious decision to declare Nevada or Colorado as his domicile. Plaintiff's connections to Nevada and Colorado center on his employment in those two states. Plaintiff rents housing wherever he is employed at any given time of year. Plaintiff receives most of his medical care in Colorado because Aspen Ski School provides his medical insurance. This court has previously noted that "[r]elocation to a state with the primary goal of working in that state does not necessarily meet the statutory requirements of domicile * * *." *Butler,* TC-MD No 050801D at 10; *see also Gorski*, TC No 4971 at 14-15 (finding that the taxpayer was domiciled in Oregon despite having moved to Texas and Florida

"for the limited purpose of acquiring the experience necessary to achieve an apparently long held career goal").

Plaintiff's ties to Colorado, including bank accounts, PO boxes, and group memberships, are easily reversed or terminated. Plaintiff's connections to Nevada, including vehicle registration and a driver license, are required by Nevada law. "Such conduct is not as determinative as actions which require the individual to make a conscious decision and declare their status." *White v. Dept. of Rev. (White)*, 14 OTR 319, 322-23 (1998). By contrast, Plaintiff voluntarily registered to vote in Oregon, obtained a resident shellfish license in Oregon, retained the services of a mechanic and a dentist in Oregon, and had his income taxes prepared in Oregon. Thus, while maintaining residences in Nevada and Colorado, Plaintiff continued to look to Oregon for financial, medical, and other personal services and maintained his personal ties to Oregon. *See White*, 14 OTR at 323; *Butler*, TC-MD No 050801D at 9. Plaintiff has not established by a preponderance of the evidence that he intended to abandon his Oregon domicile or establish a domicile outside of Oregon during or prior to any of the tax years at issue. Thus, the court finds that Plaintiff was domiciled in Oregon during the tax years at issue.

B.     *Nonresident domiciliary under ORS 316.027(1)(a)(A)(i) to (iii)*

ORS 316.027(1)(a)(A) provides a "safe harbor" for individuals domiciled in Oregon who maintain "no permanent place of abode" in Oregon, "maintain a permanent place of abode" outside of Oregon, and spend "not more than 30 days in the taxable year" in Oregon. *See also Gorski*, TC No 4971 at 15. Having found that Plaintiff was domiciled in Oregon during the tax years at issue, the court next considers whether he was a nonresident domiciliary under ORS 316.027(1)(a)(A) for any of those tax years.

/ / /

In *Ramsey v. Dept. of Rev.* (*Ramsey*), 7 OTR 478, 481 (1978), this court considered "the meaning of 'permanent place of abode' as used in ORS 316.027(1)(a). * * * There is a general understanding that ['abode'] signifies a building or shelter which is the dwelling place of a person." *Id.* at 481. The court observed that:

> "The word 'permanent,' as a modifier of 'abode,' causes confusion in connection with the patent legislative intent found in ORS 316.027(1) to give tax relief to certain domiciliaries. 'Permanent' carries the connotation of lasting, unchangeable, enduring. It cannot have that meaning in the present context. As is well known, a domiciliary, in his own state, is deemed to have a 'permanent abode,' even in rented premises, which he is free to leave as interest or pleasure may suggest, but which he has no present intention of changing or desire to change. *It is reasonable to assume that no greater burden is placed by ORS 316.027 on the nonresident domiciliary in respect to 'permanent place of abode' than upon the resident domiciliary.*"

*Id.* at 481-82 (emphasis added). The court considered as persuasive a decision of the Rhode Island Supreme Court, which held: " 'In our view the establishment of a permanent place of abode requires the maintenance of a fixed place of abode over a sufficient period of time to create a well-settled physical connection with a given locality.' " *Id.* at 483.

In *Ramsey*, the taxpayers lived abroad in several different countries on work assignments during the period April 1967 through June 1976. 7 OTR at 479. The taxpayers' work assignments were typically two years in length. *Id.* While abroad in Barbados, the taxpayers in *Ramsey* "spent two weeks in a hotel upon their arrival * * *. On June 1, 1974, they moved into a house where they stayed until December 27, 1974. They took temporary lodging for a few days, running into 1975, until they found another house in which they lived for about eight months." *Id.* at 480. Despite numerous changes of the taxpayer's abode, the court held that the taxpayers satisfied the requirements of ORS 316.027(1)(a). *Id.* at 484.

The court's decision in *Ramsey* is reflected in Defendant's administrative rule, stating that a permanent place of abode is "a dwelling place permanently maintained by the taxpayer,

whether or not owned by the taxpayer[.] * * * To constitute a permanent place of abode, the taxpayer must maintain a fixed place of abode over a sufficient period of time to create a well-settled physical connection with a given locality." OAR 150-316.027(1)(b).

In *Glass*, the court considered whether the taxpayer, a driver with five routes all outside of Oregon, whose "primary or 'permanent' abode [was] his truck," had a "permanent place of abode" outside of Oregon, within the meaning of ORS 316.027(1)(a). 15 OTR at 121. The court distinguished the facts presented from those in *Ramsey*:

> "In *Ramsey,* this court found that where taxpayers' employment took them to different locations, and they lived for four months in Seattle, Washington, and seven months in a house in Barbados, they satisfied the requirement of maintaining a permanent place of abode elsewhere. Although the abodes had a fixed location, the taxpayers changed their abode and therefore their location. In the instant case, taxpayer maintains the same form or type of abode but that abode is mobile and changes location."

*Glass*, 15 OTR at 122. Noting that it did "not seem fair that a taxpayer who lives and works in a truck operating entirely outside Oregon (except on rare occasions) should be required to pay Oregon personal income taxes," the court nevertheless concluded that the taxpayer's truck was not a "permanent place of abode." *Id.* at 123. The court reasoned that " 'place' suggests the requirement of a location. If the word 'place' is omitted, then the statute simply requires a taxpayer to maintain a permanent abode." *Id*.

In *Gorski*, this court found that the taxpayer had not established a "permanent place of abode" when he leased an unfurnished apartment while looking for work elsewhere or when he rented a room in a furnished home. TC No 4971 at 17. The court observed that, "by renting rooms in furnished homes taxpayer most likely avoided a good deal of the expense and investment commonly associated with setting up a new permanent dwelling place." *Id.*

Plaintiff testified that, when he is in Oregon, he stays at his parents' home and sleeps in an office that doubles as a guest room. Defendant concedes, and the court agrees, that Plaintiff did not maintain a permanent place of abode in Oregon. (*See* Def's Closing Arg at 7.) Citing *Gorski*, Defendant argues that Plaintiff did not maintain a permanent place of abode outside of Oregon. (*Id.* at 9.) Defendant states that Plaintiff "stayed with friends and paid rent in cash. No leases ever were signed and no utility bills were in [Plaintiff's] name." (*Id.* (internal citations omitted).) Defendant further notes that Plaintiff "was a seasonal employee, which meant that his stay in any locale was always temporary." (*Id.* at 10 (citation omitted).) Plaintiff considers his employment to be permanent, stating that he "does not have to apply yearly [to the Aspen Ski School] or get fired. He is laid off due to the weather or lack of work and it is known and expected that he will return the following season." (Ptf's Closing Arg at 2, July 23, 2012.) Although Plaintiff's employment in both Colorado and Nevada was seasonal, Plaintiff has returned year after year to the same jobs since 1993. Unlike the taxpayer in *Gorski*, Plaintiff was not seeking new employment; rather, he had a reasonable expectation of continued employment in both Nevada and Colorado. The court finds that Plaintiff had permanent places of abode outside of Oregon during the tax years at issue.

Finally, the court must consider whether Plaintiff spent "not more than 30 days" in Oregon during any of the tax years at issue. Plaintiff provided some cellular phone bills, hotel reservations, and passport stamps from 2005, 2006, and 2007. (*See generally* Ptf's Exs 5, 6, 7.) For years 2005, 2006, and 2007, Plaintiff's records are from April through November, although they are not complete for each year. Plaintiff also provided monthly credit card statements dated from December 12, 2005, through December 31, 2007. (Ptf's Ex 8.) Plaintiff was unable to obtain and provide records from 2002, 2003, and 2004. (*See* Ptf's Ex 7 at 5.) Plaintiff initially

determined from his own records that he was in Oregon 31 days in 2005, 11 days in 2006, and 18 days in 2007. (*Id*.) Defendant determined that Plaintiff was in Oregon at least 45 days in 2005, at least 27 days in 2006, and at least 25 days in 2007. (Def's Closing Arg at 8.) Plaintiff subsequently agreed that he spent 27 days in Oregon in 2006 and 25 days in Oregon in 2007. (Ptf's Closing Arg at 4, July 23, 2012.)

Plaintiff testified that he was working full time as a ski instructor in Colorado from November through April in 2005, 2006, and 2007. Plaintiff's cellular phone bills indicate that he was in Colorado beginning November 23, 2005, (Ptf's Ex 5 at 6); November 23, 2006, (Ptf's Ex 6 at 7); and November 20, 2007 (Ptf's Ex 7 at 3). Plaintiff's evidence supports his testimony that he was in Colorado through April; specifically, he was in Colorado as late as April 15, 2005, (Def's Ex U at 1); and April 25, 2006 (Ptf's Ex 6 at 1-2). A review of Plaintiff's monthly credit card statements from December 12, 2005, through December 31, 2007, do not suggest that Plaintiff was in Oregon more than 27 days in 2006 or 25 days in 2007. (Ptf's Ex 8.) The court is persuaded that Plaintiff did not spend more than 30 days in Oregon in either 2006 or 2007; thus, Plaintiff was a nonresident domiciliary under ORS 316.027(1)(a)(A) for those tax years.

### III. CONCLUSION

After carefully considering all the testimony and evidence, the court finds that Plaintiff was domiciled in Oregon during the 2002 through 2005 tax years. The court further finds that Plaintiff was a nonresident domiciliary for the 2006 and 2007 tax years. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff was a resident of Oregon under ORS 316.027 for the 2002 through 2005 tax years and is liable for Oregon income tax for those years under ORS 316.037.

/ / /

IT IS FURTHER DECIDED that, under ORS 316.027(1)(a)(A), Plaintiff was a

nonresident domiciliary for the 2006 and 2007 tax years and is not liable for Oregon income tax

for those years.

Dated this ＿＿ day of October 2012.

_____

ALLISON R BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Magistrate Allison R. Boomer on October 10, 2012. The Court filed and entered this Decision on October 10, 2012.*